U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

April 10, 2020

**BY ECF**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

  Re: *United States v. Ayman Rabadi,*
     **13 Cr. 353 (KMK)**

Dear Judge Karas:

  The Government respectfully submits this letter in the above-captioned matter in response to the defendant's supplemental letter of yesterday afternoon (Dkt. 90), in which he quoted an email sent from a union representative to the warden of the Metropolitan Detention Center ("MDC") expressing certain concerns and asking certain questions related to the MDC's policies and procedures with respect to COVID-19. The Government also briefly responds to the defendant's letter reply of yesterday morning (Dkt. 89), in which he makes new arguments regarding exhaustion.

  I. **Response to the Defendant's Supplemental Letter**

  The Government sent the defendant's supplemental letter to counsel for the Federal Bureau of Prisons ("BOP"). From conferring with counsel, the Government understands that the warden has responded today directly to the union representative's email, and has advised of the following, in substance and in relevant part.

  When the MDC receives information that an inmate has tested positive for COVID-19, it strives to make notifications to staff as quickly as possible via email. Starting today, the MDC will send out an email to all staff regarding when a housing unit is placed on quarantine status. This will be in addition to, and supplement, the notification previously in place.

  All staff members have been provided with personal protective equipment ("PPE"), and in particular, two masks. It is anticipated that, as more PPE arrives at the facility, staff will be provided with additional materials. Staff who are assigned to work on a quarantined or isolation housing unit are provided additional PPE each shift. The MDC is endeavoring to ensure all staff members are fit-tested for N95 respirators.

The Honorable Kenneth M. Karas
April 10, 2020
Page 2

     Every staff member who enters the facility is screened.  Staff are encouraged to self-report symptoms and/or concerns regarding exposure. Staff are also encouraged to exercise caution, and remain home if they believe they are symptomatic or exposed.  All staff will continue to undergo temperature monitoring and symptom checks upon arrival to the institution.  Staff have been advised that if they begin to have symptoms consistent with COVID-19, they should notify their supervisor immediately and isolate in accordance with Centers for Disease Control and Prevention ("CDC") guidelines.

     MDC continues to follow the guidance received from the CDC and the BOP Central Office regarding isolated inmates.  Per that guidance, isolated individuals can be released from isolation 7 days after symptoms first developed, and 72 hours after their fever has resolved without the assistance of fever reducing medication.  To date, all inmates who have tested positive, been placed in isolation, and subsequently removed from isolation, have not been released prior to the expiration of the relevant time period.  The MDC does not understand there to be a basis to quarantine a unit to which a formerly isolated inmate is released.

     Certain staff members have unfortunately tested positive, and the MDC provides as much information as possible to staff, without violating the privacy rights of the affected individuals.  Upon notification that a staff member has tested positive, a contact investigation occurs.  Health Services staff speak with the staff member who had the positive test result to obtain a list of staff they have been in close contact with, as well as the areas worked during the questioned time frame.  Health Services staff then contact all possible individuals they have been notified of, and screen those individuals for symptoms.  The staff who need to be notified are informed, and the privacy rights of all individuals involved is protected.

    **II.**     **Response to the Defendant's Reply Letter**

     In his reply letter, the defendant repeats certain arguments he previously made regarding the exhaustion of administrative remedies, and also presses new arguments, namely, analogizing the requirement here to that in the Title VII and other contexts.  That analogy fails for the reasons previously set forth in the Government's letter in opposition, and also, in particular, as described in Judge Furman's recent decision, *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y Apr. 8, 2020).

     The defendant also asks why the Government has discretion to decline to invoke the exhaustion requirement in certain cases.  The answer, as also noted in Judge Furman's decision, *see id.* at *1, is that the requirement here is not jurisdictional  The Government may accordingly waive that requirement, and has in limited cases, by declining to raise the argument.

The Honorable Kenneth M. Karas
April 10, 2020
Page 3

      Although some courts of appeals have held that failure to meet the criteria set forth in Section 3582(c) is a "jurisdictional" defect that deprives the court of power to act,[1] and the Second Circuit has not specifically addressed whether the exhaustion requirement in Section 3582(c)(1)(A) is jurisdictional, it has disagreed with the general characterization that the criteria set forth in Section 3582(c) deprive the court of jurisdiction if not met. *See United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013). Thus, the exhaustion requirement is not a jurisdictional bar but a so-called "claims processing" or "case-processing" rule—a rule that seeks "to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011); *see United States v. Villanueva*, No. 18 Cr. 472 (KPF) (S.D.N.Y. Apr. 8, 2020) (Dkt. 85, at 7) (finding that Section 3582(c)'s exhaustion requirement is a claims-processing rule); *United States v. Monzon*, No. 99 Cr. 157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (finding that Section 3582(c)(1)(A)'s exhaustion requirement is at least a claims-processing rule); *see also Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019) (listing examples of claims-processing rules); *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (deadline for Rule 33 motion is a non-jurisdictional, claims-processing rule); *United States v. Taylor*, 778 F.3d 667, 670, 671 (7th Cir. 2015) (holding that Section 3582(c) is "a non-jurisdictional case processing rule" because it is outside the jurisdictional provisions of the criminal code and not "phrased in jurisdictional terms" (internal quotation marks omitted)). As a "claims processing" rule, the Government may waive enforcement by declining to raise the argument. *See Eberhart*, 546 U.S. at 15; *see id.* at 19 ("These claim-processing rules thus assure relief to a party properly raising them, but do not compel the same result if the party forfeits them.").

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney

By:    s/ Daniel C. Richenthal
        Margery B. Feinzig
        Daniel C. Richenthal
        Assistant United States Attorneys
        (914) 993-1903/(212) 637-2109

cc:    (by ECF)

       Counsel of Record

---

[1] *See, e.g.*, *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010); *United States v. Williams*, 607 F.3d 1123, 1125-26 (6th Cir. 2010); *United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993); *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012); *United States v. Graham*, 704 F.3d 1275, 1279 (10th Cir. 2013); *United States v. Mills*, 613 F.3d 1070, 1078 (11th Cir. 2010).