UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

AYMAN RABADI,

                    Defendant.

No. 13-CR-353 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

On April 3, 2020, Ayman Rabadi ("Rabadi" or "Defendant"), who is serving a sentence

at the Metropolitan Detention Center ("MDC"), filed a motion seeking compassionate release

based on the COVID-19 outbreak.  (*See generally* Emergency Mot. for Compassionate Release

("Def.'s Mem.") (Dkt No. 84).)  Defendant suffers from some medical ailments, and, thus,

contends that he may have a heightened risk of death in the event that he contracts COVID-19.

(*Id.* at 2–3.)  And, as an inmate in the MDC, a densely-populated facility jail in which inmates

have tested positive for COVID-19, he faces an acute danger of contracting the disease.  *See*

*Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional*

*and Detention Facilities*, Ctr. for Disease Control, at 2 (Mar. 23, 2020), *available at*

https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf.

Putting aside, for now, the merits of Defendant's concerns, the Court lacks authority to order the

relief he seeks under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A).  Accordingly,

and for the reasons stated below, the motion is denied without prejudice.[1]

_____

[1] The Court notes that Rabadi has asked the Bureau of Prisons ("BOP") to consider
whether to grant him temporary release pursuant to the furlough statute, 18 U.S.C. § 3622.

## I.  Background

On October 19, 2018, the Court issued an arrest warrant based on a Petition for Violation of Supervised Release (the "Petition") alleging, in two specifications, that Rabadi engaged in wire fraud and impersonation of a federal officer, in violation of 18 U.S.C. §§ 1343 and 912. (*See* Sept. 12, 2019 Stipulation and Order ("Stipulation") ¶ 1 (Dkt. No. 79).)  Rabadi was then serving a term of supervised release after having served a three-year term of imprisonment for his conviction, in May 2013, of engaging in a wire fraud scheme that also involved impersonating a federal officer.  (*See* Dkt. No. 37.)

On May 31, 2019, Rabadi admitted Specification One of the Petition, which charged that from in or about June 2017 through in or about September 2017, Rabadi committed wire fraud, in violation of 18 U.S.C. §§ 1343 and 2.  (Stipulation ¶ 3.)  Specifically, it charges that Rabadi fraudulently sought and obtained hundreds of thousands of dollars from a criminal defense attorney ("Lawyer-1") by making and/or causing others to make false representations to Lawyer-1, purportedly from federal agents who, in truth, did not exist, that Lawyer-1 would be charged with alleged crimes if Lawyer-1 did not make payments to Rabadi to give to those agents, and sent and caused others to send interstate wires in furtherance of the scheme.  (*Id.*)[2]

On August 21, 2019, the Court sentenced Rabadi to 24 months in prison for the violation of supervised release, which was the statutory maximum.  (*See* Dkt. No. 82.)  He has served the majority of that sentence and his projected release date is July 19, 2020.

---

[2] The Government notes that in two prior cases, Rabadi also defrauded victims by making false representations that he had connections to law enforcement or by impersonating law enforcement—precisely as he did yet again while on supervised release.  (*See* Letter of Assistant United States Attorney Daniel C. Richenthal to the Court, Apr. 8, 2020 ("Richenthal Letter"), at 2 (Dkt. No. 87).)

## II.  Discussion

It is beyond dispute that "[a] court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *See United States v. Gotti*, -- F. Supp. 3d --, No. 2-CR-743-07, 2020 WL 497987, at \*1 (S.D.N.Y. Jan. 15, 2020).  Before 2018, only the BOP could move for the compassionate release of a criminal defendant.  *Id.*  However, the First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to move for compassionate release.  *See* Pub. L. 115-391, Sec. 603(b)(1).  This amendment did not give defendants the unfettered ability to file for compassionate release.  Instead, the statute provides that a defendant may file such a motion only if certain conditions are met:

> **(c)** Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>> **(1)** in any case--
>>> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>> **(i)** extraordinary and compelling reasons warrant such a reduction; or **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c) (emphasis added).  Simply put, under this provision, a criminal defendant may file a motion for compassionate release only if either: (1) he has exhausted all

administrative rights to appeal the BOP's failure to bring a motion on his behalf, or (2) 30 days

have passed since the warden of his facility received his request for the BOP to file a motion on

his behalf.  *See United States, v. Alam*, No. 15-CR-20351, 2020 WL 1703881, at *2 (E.D. Mich.

Apr. 8, 2020).

Here, no release motion has been made by the BOP Director and Defendant concedes that

he has not yet satisfied the requirements for bringing a motion on his own.  *See* Def.'s Mem. 4.

While the Government has conceded in other cases that it can waive the exhaustion requirement,

*see, e.g.*, *United States v. Roberts*, No. 18-CR-528-5, 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8,

2020), and has exercised its discretion to waive it in other cases based on the threat of COVID-

19, *see, e.g.*, *United States v. Jasper*, No. 18-CR-390-18, ECF Dkt. No. 440 (S.D.N.Y. Apr. 6,

2020), it has decided not to do so here.

Defendant argues that the Court should waive the exhaustion requirement, based on an

"intensely practical" analysis of the policies behind the First Step Act.  (Def's Mem. at 5-6,

*citing Bowen v. City of New York*, 476 U.S. 467, 484 (1986) and *Mathews v. Eldridge*, 424 U.S.

319, 332 n.11 (1976).)  According to Defendant, Congress did not intend the First Step Act to be

subject to "blind adherence" to the exhaustion requirement, "as evidenced by the exception

baked into § 3582(c)(1)(A), which provides that Defendants can bypass exhaustion altogether if

the warden fails to act on an administrative application for compassionate release within 30 days.

(*Id*. at 7.)  But, as the Government points out (Richenthal Letter at 14), the Supreme Court has,

since *Mathews* and *Bowen*, made clear that courts are "not free to rewrite the statutory text"

when Congress has "bar[red] claimants from bringing suit in federal court until they have

exhausted their administrative remedies."  *McNeil v. United States*, 508 U.S. 106, 111 (1993).

Indeed, where Congress has mandated exhaustion, the Supreme Court has rejected attempts to

rely on the policies of administrative exhaustion, like those cited in *Bowen*, as a basis to ignore

or waive the requirement. *See, e.g.*, *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). As the

Supreme Court has emphasized, "a statutory exhaustion provision stands on different footing."

*Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

Following this principle, courts have regularly held that statutory exhaustion

requirements, such as those in Section 3582(c), must be "strictly" enforced. *United States v.*

*Monzon*, No. 99-CR-157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020); *United States v.*

*Raia*, — F.3d —, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (characterizing

the failure to exhaust as a "glaring roadblock foreclosing compassionate release at this point").

This explains why the vast majority of courts to have considered the issue have "concluded that a

failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing

motions for compassionate release, and that the judiciary has no power to craft an exception to

these requirements for defendants seeking release during the COVID-19 pandemic." *Alam*, 2020

WL 1703881, at *2; *see also Raia*, -- F.3d --, 2020 WL 1647922 at *2-3 (stating that 18 U.S.C. §

3582(c)'s exhaustion requirement foreclosed compassionate release and that "any remand would

be futile"); *United States v. Woodson*, No. 18-CR-845, 2020 WL 1673253 at *3–4 (S.D.N.Y.

April 6, 2020) ("Where Congress has with sufficient clarity mandated exhaustion, courts will not

read exceptions into statutes.") (citations and quotation marks omitted); *United States v.*

*Weiland*, No. 18-CR-273, 2020 WL 1674137 at *1 (S.D.N.Y. April 6, 2020) ("Defendant is

incorrect that the Court has authority to waive the administrative exhaustion requirements stated

in § 3582."); *United States v. Holden*, No. 13-CR-444, 2020 WL 1673440 at *10 (D. Or. April 6,

2020) ("Because Defendant has not satisfied the exhaustion provision . . . this Court lacks

authority to address Defendant's motion for reduction of sentence."); *United States v. Rivers*, 17-

CR-23, 2020 WL 1676798 at *2 (D. V.I. April 6, 2020) ("Nor is the Court permitted, as Defendant suggests, to waive the exhaustion requirement."); *United States v. Johnson*, No. 14-CR-441, 2020 WL 1663360 at *6 (D. Md. April 3, 2020) ("In summary, this Court will not read an exception into § 3582(c)(1) which does not exist."); *United States v. Perry*, No. 18-CR-480, 2020 WL 1676773 at *1 (D. Colo. April 3, 2020) (concluding that the defendant's argument that the court could read an exception into the exhaustion requirement was not "persuasive" and "unsupported by case law"); *United States v. Carver*, No. 19-CR-6044, 2020 WL 1604968 at *1 (E.D. Wash. April, 1, 2020) (stating "the administrative exhaustion requirement admits of no exception" and "[t]he Court's hands are bound by the statute.").  Moreover, the 30-day limit, which Defendant proffers as proof that Congress meant that the exhaustion requirement comes with built-in exceptions, actually serves as "a limited futility-like exception," *Roberts*, 2020 WL 1700032 at *2, because it allows an inmate to seek relief "after . . . the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  18 U.S.C. § 3582(c)(1)(A). Thus, given "Congress's decision to mandate exhaustion and to specify a single alternative, the Court is not free to infer a general 'unwritten "special circumstances" exception.'"  *Roberts*, 2020 WL 1700032, at *2.[3]

## III.  Conclusion

For the reasons discussed above, the Court denies the application without prejudice to renewal if the BOP does not act upon his request within thirty days of its receipt.

---

[3] In his reply submission, Defendant urges the Court to borrow from exhaustion provisions found in Title VII and the Social Security Act.  (*See* Reply Mem. 3–4 (Dkt. No. 88.) The exhaustion provisions in these statutes, however, have been interpreted to allow for waivers by the courts, a feature not found in § 3582.  *See Roberts*, 2020 WL 1700032, at *2.

The Clerk of the Court is respectfully directed to terminate the motions. (Dkt. Nos. 84, 86, and 90.)

SO ORDERED.

DATED:      April 13, 2020
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE